Good afternoon and may it please the court. Mr. Green asks this court to do the same that the 3rd, 6th, 10th, and 11th circuits have already done and find that Hobbs Act robbery does not qualify as a crime of violence under the career offender guidelines. As we all know, there are two ways that an offense can qualify as a crime of violence under the career offender guideline. It can qualify under the force clause if it has as an element the attempted use or threatened use of physical force against the person of another or it can qualify under the enumerated offenses clause as any one of the specified enumerated crimes contained within that portion of the guideline and in this case at dispute is whether or not it would qualify as robbery or extortion under the enumerated offenses clause. To answer that question, we apply the categorical approach which requires a comparison of the scope of the conduct covered by the statutory elements of the crime with 4B1.2a's definition of a crime of violence and if the statute sweeps more broadly than 4B1.2a's definition, then any conviction under that statute cannot count as a crime of violence. As I started out, there are four circuits already that have ruled exactly as we were asking the court to do so in this case. So all those... How many have we ruled against you, Ms. Ramey? Not aware of any that have ruled against us yet, your honor. We've got the third circuit, the sixth circuit, the tenth circuit, and the eleventh circuit all squarely address the issue that we're talking about here today and we can... I think we can lump in the ninth circuit as well in Unias versus Edling because what was under evaluation there was a Nevada robbery statute that but for the addition of some gender specific pronouns is identical to the Hobbs Act robbery statute. So really it's five circuits that have already ruled and formed what I've called a wall of authority that really supports Mr. Green's position in this case. So everybody's with you. How did this case end up on the other side of that group? Well, unfortunately the district court erred in finding that Mr. Green was a career offender in this case and we believe that that was error in this case. All the circuits that have encountered this issue have determined that Hobbs Act robbery does not qualify under the force clause. It doesn't qualify as generic robbery under the enumerated offenses clause and it doesn't qualify as guidelines extortion under the enumerated offenses clause either. But you're just looking at the guidelines definition, right? Yes. Statutory definition is a different thing. I'm sorry, maybe I misunderstood the court's question. The statutory definition is a different thing. Yes, so looking at the definition of Hobbs Act robbery, what's clear is that it permits the crime to be committed by the use or threatened use of force against the person or property. And when you compare that using the categorical approach with the force clause definition, which is that the offense has as an element the use attempted use or threatened use of physical force against the person, it's clear that there is more conduct that is criminalized by Hobbs Act robbery than is captured within the force clause definition. And so for that reason, all the other courts to examine and consider this issue have determined that there is a mismatch and that Hobbs Act robbery categorically fails to qualify under the force clause. Likewise, doing a similar comparison looking at the generic robbery definition is really the same, a very similar analysis. So you're comparing the Hobbs Act robbery definition with what this court has defined as, this court has defined generic robbery as the misappropriation of property under circumstances involving immediate danger to the person. So we've got two problems there. One is the immediacy requirement, and when you compare that against the Hobbs Act robbery statute, that says that Hobbs Act robbery can be committed with actual or threatened force immediate or in the future. So there's an immediacy requirement that's in the generic robbery definition that we think takes it out here. And then of course, it requires that that threat of danger be to the person, whereas Hobbs Act robbery is more broad than that and includes a threat to personal property. And again, all of the circuits to examine this issue have determined that under the enumerated offenses clause, generic robbery, Hobbs Act robbery does not fit the definition of generic robbery. And then finally... Counsel, this is Judge Harris. Counsel, Judge Harris, just quickly, am I remembering right that it's the government, that's also been the government's position in several of these cases? Yes, the government is essentially, well going to the force clause, I mean the government, that's something that the courts that have examined the issue really dispensed with relatively quickly in their decisions. It was described basically as an obvious answer to the question in one of them. And then yes, in one of the cases, the government actually conceded the issue under the force clause. Okay. Which case was that? I'm trying to recall. I believe they conceded the issue in Ham. I believe it was in Rodriguez in the Third Circuit, right? And the government didn't just concede it under the force clause. I think they conceded it under guidelines robbery as well. There was only a discussion of extortion, if I'm recalling that correctly. I think the court's right. The primary focus and the biggest point of contention on the merits has under the extortion definition. And even though I would say less than half, it was basically O'Connor that ultimately found that the rule of lenity applied, most of the courts did not even go to the rule of lenity. Most of the courts determined that the most natural reading of physical injury in that definition means bodily injury. And so the general conclusion across the board is that again, Hobbs Act robbery is more broad than the guidelines extortion definition, and therefore it does not qualify as a crime of violence as enumerated extortion. And so with all of these cases, all of these circuits that have ruled exactly the way that we're proposing this court should rule, we believe that on the merits, this is a very strong case for Mr. Green. It's a very straightforward analysis. It's just a simple comparison under the categorical approach of Hobbs Act robbery statute to each of the potential definitions. And under each one, it fails to qualify, and it's clear. So we believe that this court should follow suit and follow what O'Connor in the 10th Circuit, what Camp in the 6th Circuit, Rodriguez in the 3rd Circuit, Eason in the 11th Circuit, that was the most recent case to deal with this, and also a lumping in Edling out of the 9th should join those circuits in ruling that Hobbs Act robbery does not qualify as a crime of violence under the criminal, I'm sorry, the career offender guideline. Very good, Ms. Reaney. Let's see what Mr. Alston has to say. Certainly. Mr. Alston, are you up there? Good afternoon, Your Honor. Good to have you with us. Thank you, Justin. Good afternoon, Your Honors, and may it please the court. The United States asks that the court affirm the sentence imposed by the district court for Mr. Green's third conviction for an armed robbery while we have spent, or I should say the panel has spent much time with my colleague about the career offender provision. I note that as the government frames the issue, this is one where we look at the sentence in clarity, not only the application of the provision, but also whether there was procedural and substantive reasonableness under either plain error or the harmless error review standard. I'll start by noting that in July 2015, Mr. Green entered a convenience store, brandished a firearm, stole money, and during his escape threatened a bystander and fired a warning shot before leaving the scene. Mr. Alston, sorry to interrupt you. This is Ted Rushing. The first thing I'm wondering from the government, though, is why are you taking a different position in this case than the government did in the Third Circuit in the Rodriguez case? Respectfully, Your Honor, I'm not entirely sure of the reasoning for the government's position in the Rodriguez case. I would note that the position taken in this case is consistent with the position taken in Eason, which is actually more recent than Rodriguez. One might say that the- Counsel, this is Judge Harris. Just to be clear, in three different circuits, the government has conceded that there's not a match with generic robbery. I am troubled. The United States only gets to have one position. And are you suggesting that maybe at one time the government's position was that it doesn't match with generic robbery, but then after it lost four cases on that point, it changed its position and decided that it did match? No, Your Honor. I don't believe that I would describe it that way. I don't think it has been a matter of changing its position. I would note that this issue had come up, although it was not decided by this court some time ago, and the position taken in this case remains consistent with that and was not driven by success. Do you know what the- Mr. Austin, do you know what the position of the Solicitor General or the Criminal Division is on this question? I do not know today, Judge King. Have you not attempted to ascertain that before you came down here? I have spoken with the appellate chief within our office about it. I cannot say whether that individual- But Maryland, the Maryland office can't take- shouldn't be taking a different position. Judge Rushing and Judge Harris, Judge Romero on this one, you should be taking a consistent position with the Criminal Division and the Solicitor General. You and the other circuits, the other officers in these other cases as well, unless they're out on a limb. Judge King, I do understand your point. I'm unfortunately not able to say which one of us, to use your phrase, may or may not be out on a limb. Somebody is, looks like, or sounds like. Go ahead. I'm sorry to take your time. No, no, certainly. I certainly understand the court's concern about what would appear to be some disuniformity among these cases. I think there's, as reflected in the brief, some authority for the positions taken with respect to each of the government's arguments, particularly when looking at the force clause, the citation to Fifth Circuit case in Tellez-Martinez that involved a California statute that is substantially similar to the Hobjack robbery, saying that there is a threat of force that can harm the person that is inherent in the taking that is described by that California statute that mirrors the Hobjack robbery. So in that sense, there is authority to support that position that it would apply under the force clause. I do understand that other circuits have disagreed, but the government does note that that authority is out there and believes that that authority would support its position. Similarly, there's authority that would support the position that generic robbery would. We're talking about the position of the United States of America. It should be taking one position in these cases in every court of appeals and in every district court. It should be taking the same position. And I don't think that any attorney general would ever take exception to that proposition. Again, I understand that, Judge. I unfortunately am not equipped with the facts that may answer the panel's questions, which I certainly understand. And I don't want to misrepresent anything, and I don't want to be dismissive either. I am not aware of whether the solicitor general has or has not adopted a formal position on this to be applied across the department and all offices at large. And again, I know that there have been some shifts even before this case, not that that necessarily addresses the court's concerns, but this seems to be something that perhaps was not settled in those other cases as well. I don't know that that the categorical approach argument. I would note for the court that the government believes that the cases that find in favor of Mr. Green's position do focus a lot on the distinction of person versus property and threats there. And I'd like to speak to that briefly, particularly that the government submits here that while it is important to focus on all language of statute, what's equally important is to focus on the fact that this is a taking of personal property from the victim and turn it back to the Fifth Circuit case in Tellez Martinez. Because of the context, the threat of force is one that would be, that would carry this inherent danger to the person, and therefore, the force clause may be definition because that in some aspects, again, turns on the person versus property dichotomy. I will turn to the extortion argument. As my colleague noted, the courts have spent a bit more time on that. And the issue here from the government's perspective is the party's divergence on physical injury, whether this extends to property. And the government's brief does cite some authority that it believes supports the position that the Hobbs Act reflects the generally accepted definition of extortion, that Lefebvre explains that threats against property are long considered within extortion scope. These understandings would inform how physical injury should be interpreted and construed in this instance. And that really is part of why the again, I would note that the Sentencing Commission's comments on the proposed amendment certainly reflect that there was no indication to take Hobbs Act robbery outside of the career defender's vision in the government. Counsel, Mr. Churchill, can I ask you a question about the Sentencing Commission's commentary? Yes. And the Hobbs Act. I feel like I probably am reading this wrong because no other court has trouble by this, but I am. It sort of looked to me as though what the commission was saying that was, look, we're doing a separate definition now because we're trying to narrow the generic definition. And the generic definition, they say, would be broader under the case law existing at the time of this amendment. Courts are generally defining extortion in a broader way based on the Nardello, which defines extortion for purposes of the Hobbs Act. And then they say, we want something narrower than that. So it sort of looked to me like whatever else would be in or outside this guidelines definition, the whole point was to make it narrower than Nardello's description or definition of extortion under the Hobbs Act. What am I missing? Judge, Judge, I don't know that you're, I'm not sure what you may be missing. You are right that this is a point that I didn't see raised in some of the other courts. I think the commission was proposing multiple routes here and seeking some comment on which perhaps may be the best route forward. I know one proposal involved preventing the use of the categorical approach entirely. And then another proposal involved redefining some of these offenses to correct what it perceives as some miscommunication about the career offenders provisions extension to the Hobbs Act. I think at bottom what can be taken away is that the commission is intending to one way or another ensure that Hobbs Act robbery, which I would know parenthetically is essentially the quintessential federal robbery offense, the archetypal crime of violence. The commission is attempting to find what it perceives as the best way to include or to ensure that Hobbs Act robbery is not excluded, I should say, from the career offender provision. And so whether it comes through a way of redefining extortion or explaining the definition of extortion or redefining robbery or disclaiming any reliance on the categorical approach, I think the commission's intent is clear and the means by which way it should do it, I think are in some sense open questions for which it was seeking to comment about what may be the most prudent way to do that. I don't know that that answers your question about what they were attempting to do, but it's my read that what they were attempting, what they're saying there isn't necessarily how they want to resolve this permanently, but rather exploring ways to ensure the Hobbs Act robbery remains within the provision's scope. All right, thank you. Just catching my train of thought here. One thing I wanted to emphasize that also was in the briefs, in applying the categorical approach, which the parties do agree applies here, there's been no dispute here. I don't think there's been any dispute in any of the other courts to address this issue. The focus under Taylor is an examination of substantial correspondence and the government thinks that that is important language because the word for word match sometimes can lend itself to results that may be counterintuitive in some sense. It's for those reasons that the government continues to take the position that the guidelines as defined now, understanding that they have endured some change and may endure some in the future, the guidelines as defined now continue to include Hobbs Act robbery for the longstanding view that Hobbs Act robbery is a crime of violence and that there is no indication, notwithstanding some of this confusion that your honor has pointed out, there's no indication that Hobbs Act robbery is intended to not be considered a crime of violence. In fact, it would lend itself to some uneven and inconsistent applications if the court were to consider conduct to be a crime of violence simply because of some alternative wording in the state statute versus the federal statute. To that point, I would note that Mr. Green has two offenses for state court convictions that were qualifiers for the court's determination and those involved what are essentially the same conduct and while I understand that the court looks at elements, not facts, it does speak to how the court should view the statutes that are at issue and also aim to affect the sentencing commission's intent. I'd also like to turn, unless the court has additional questions on the Hobbs Act issue, I do want to speak briefly to the issue of error because I do believe that that is equally important here, notwithstanding the party's disagreement about the Hobbs Act and the career offender provision, the court need not address the issue ultimately or I should say that issue is not necessarily dispositive due to the standards of review here. The government maintains that this is a plain error standard because the argument was not raised as framed in the district court and I certainly understand that Nieve versus Escondido counsels that the court may take a broad view as to argument preservation, but I would note two things here. One is that the argument that's now being pressed appeared to be openly disclaimed in the district court in the footnote that is cited in the government's brief where the trial counsel made the argument that the Hobbs Act robbery conviction was not a predicate offense, predicate qualifying offense, because it was void for vagueness under Beckles. That is the argument that the district court addressed. The rule regarding argument preservation obviously is one that is aimed at fair notice of the substance and issue to allow not only fair notice to the district court, but also for a full record and rationale to be developed for this court to review. Counsel, this is Judge Harris. So, I mean, I did find the defendant's argument in his sentencing memorandum somewhat ambiguous, although he also cited quarrels, which is about, you know, an elements-based analysis. So, it was hard to get my hands around, but the thing that was really clear was the government's in its sentencing memorandum, because it argued expressly Hobbs Act robbery qualifies as a guidelines crime of violence because it matches the enumerated offense of robbery. And so, I think the element's question was not just vagueness, it was in front of the district court, and I think the district court did allude to it. And I don't mean to put you on the spot, but what troubled me was that the government's brief was filed in 2019, and the government told the district court just in a sentence, look, Hobbs Act robbery matches generic robbery, at a time when that was contrary to the position the government was taking in other courts, and at a time when at least three appellate courts had rejected that argument. And when I think about how this mistake got made, it sort of looks to me like, that's the right way to put this, nobody is exactly above reproach here. That's all I have to say. It seems to me that there was, to the extent that this wasn't properly framed for the district court, I'm not sure the government doesn't share some of the responsibility for that. I understand your point, Judge Harris, about perhaps some confusion in the fact that this was not ironed out, so to speak, in a sense that there was a uniform front put up for the district court. I do think that that does not necessarily preserve the argument that Mr. Green made, but I will say this, the party's positions on the standard of review are made clear here, given the overlap in some of the Alano elements in the harmless error considerations. The government believes that the result would be the same, because at bottom, in this case, it's going to turn on whether there was an effect on substantive rights. Really, for the purposes of this appeal, I would submit that whether you find that it's plain error or that it's a harmless error review is just a matter of who the burden is upon, whether it's upon Mr. Green to show that Alano was satisfied, or whether it's upon the government to show that harmless error analysis is satisfied. Turning to that, I would note briefly, Mr. Green's briefs do not, in the government's view, wrestle with the district court's statements as to why it imposed the sentence it imposed. Not even the reply brief wrestles with Savion Matute, McDonald, Gomez-Jimenez, cases that say that the court need not explicitly say it would have imposed the same sentence, absent the statement of enhancement, so long as the record is clear. In here, what I think- No, no, sorry. Let's go to Harris again. But the court, in this case, did explicitly say, if I turn out to be wrong about whether or not the career offender enhancement applies, we'll look at this again. I mean, that's kind of the opposite of what you're looking for, for harmless error review, right? The district court explicitly said. I would respectfully disagree with that characterization. My understanding, and I was present for the sentencing in this case, is that the district court said, and I am looking now at JA 98, line four, the district court said we have actual armed robbery. The elements, he speaks to the elements, the district court speaks to his finding that it was a predicate offense, and then says, I understand it is an issue that has not been fully decided, so that could affect, we could relook at this again, if a higher court were to determine that a Hobbs Act robbery is not a predicate offense. And while that certainly acknowledges that this is an open question, I don't think that's a commitment to saying essentially what Mr. Green thinks the record is saying, which is, I don't think that's a just because I found that it's a predicate offense. I think it is the opposite. I think here what we have is a career offender guideline that at the low end was, if I recall correctly, 151 months, a non-career offender guideline that at the high end was 96 months. We have a plea under federal rule of criminal procedure 11C1C that the sentence would be no less than 120 months. There was already a contemplation that this sentence would exceed the top of the non-career offender guidelines. And I see that my time is up, if I may at least continue the response to the question. Go ahead and finish. What we have here is a sentence that was already going to be above the guidelines. And even then the court noted that something at the bottom of imposed. That would not be sufficient, even for someone with no criminal history, that would not be sufficient given the facts of the offense. Here we have Mr. Green who had multiple armed robbery convictions in his past. And so that had justified something more than even the 120 months. So while I do, Judge Harris, take your point about considering that this could possibly come back, I think that the explanation of the sentence itself, which comes later in the actually falls within the Salve Amitud Gomez Jimenez Hargrove and other harmless error context, because it is clear that the government or I'm sorry, that the district court would have imposed a sentence going below the career offender guidelines and well above not only the non-career offender guidelines, but the 120 month read upon minimum. And so unless the court has any sentence imposed in this case. Thank you, Mr. Alston. Ms. Remy. Yes. Does the court have any specific question or area that it wants me to focus on? I only have a few minutes. I'd like to use it to answer the court's questions. Okay. Well, I think that if the court doesn't have any questions, I would respond just briefly to the idea that it's harmless error. It's not harmless error here, even though the district court varied downward from the incorrect guidelines range, it greatly impacted the ultimate sentence, which was 144 months that was imposed. And that's four years over the top of the non-career offender guidelines range, which was 77 to 96 months. So although the district court said it would not have imposed a 96 month sentence with or without the career offender enhancement, it never said or even hinted it wouldn't have imposed up 100, it would have imposed a 144 month sentence without the career offender enhancement. And, you know, so we, we believe that, you know, the error here makes a huge difference and that there's a very real possibility that the district court would have sentenced Mr. Green differently if the correct guideline range had been applied. And with that, if the court doesn't have any other specific questions for me, then I have nothing else to present. Thank you very much. And I take note of the proposition of the fact that you are court appointed and we really appreciate you working on this case in that status. And we couldn't do our work without lawyers like you.
judges: Robert B. King, Pamela A. Harris, Allison J. Rushing